**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

RYAN CONNORS, individually and on behalf of all others similarly situated,

*Plaintiff*,

vs.

RED LIFE STUDIOS, LLC,

*Defendant*.
_______________________________________/

**CLASS ACTION**

**Case No.**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1. Plaintiff, Ryan Connors ("Plaintiff"), brings this action against Defendant, Red Life Studios, LLC ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the Florida Consumer Protection Act ("FTSA") Fla. Stat. § 501.059.

## NATURE OF THE ACTION

2. This is a putative class action pursuant to the TCPA and FTSA.

3. Defendant is a privately managed marketing company headquartered in Clearwater Florida. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class,

which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA and FTSA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

6. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in this District, Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

**PARTIES**

7. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Palm Beach County, Florida.

8. Plaintiff is, and at all times relevant hereto was, an individual and the sole suscriber of the residential telephone number ending in 9213 (the "9213 Number") that received Defendant's telephonic sales calls.

9. Defendant is a Delaware limited liability company whose principal office is located at 1150 Cleveland St, Suite 200, Clearwater, Florida 33755. Defendant directs, markets, and provides its business activities throughout the State of Florida.

10. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

11. Beginning at least in early 2025 (as shown below), Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff's 9213 Number from Defendant's 727-425-5138 number:




12. Defendant's text messages did not include opt-out instructions.

13. On February 7, 2025, Plaintiff responded with the word "Stop" in an attempt to opt-out of any further text message communications with Defendant, as shown above.

14. Despite Plaintiff's use of standard opt-out language, Defendant ignored Plaintiff's opt-out demand and continued to send Plaintiff additional telemarketing text messages on or about February 8, 2025 continuing through at least June, 2025, as shown below:




15. Defendant has the capability of immediately complying with Plaintiff's opt-out request.

16. As demonstrated by the above screenshots, Defendant does not honor reasonable consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's telephone solicitations by telling Defendant not to contact him anymore, but Defendant continued to text message Plaintiff intentionally disregarding Plaintiff's instructions (for a period of approximately 4 months) in order to solicit the sale of its services to Plaintiff.

17. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant.

18. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

19. Defendant failed to place Plaintiff on an internal do-not-call list after Plaintiff's "Stop" opt-out instructions.

20. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

21. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not maintain an internal do-not-call list.

22. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made an opt-out request and that request was never processed; it was ignored by Defendant and its employees and Defendant continued to send text messages for approximately four months.

23. These facts strongly suggest that Defendant fails to ensure that requests by Plaintiff and the Class members to opt-out of future communications are honored within a reasonable time.

24. Indeed Plaintiff's and the class members' opt-out requests were not honored within a reasonable time from when the opt-out request was made.

25. Defendant's text messages were transmitted to Plaintiff's residential cellular telephone, and within the time frame relevant to this action.

26. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., promoting consumer marketing services and content creation products.

27. Further, as demonstrated by the above screenshots, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services – consumer marketing services and content creation products.

28. Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA and FTSA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

29. Defendant's texts were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

30. Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1).

31. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarking in the existence and the use of any internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(2).

32. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not maintain a standalone do-not-call list. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

33. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made repeated opt-out requests and those requests were never processed; they were ignored by Defendant and its employees and Defendant escalated the volume of its text message solicitations.

34. Defendant sent at least four solicitations after Plaintiff' initial opt-out request.

35. Defendant sent Plaintiff text message solicitations more than 15 (fifteen) days after Plaintiff's first "stop" request.

36. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted.

37. Specifically, Plaintiff never completed any type of form that clearly and conspicuously authorized Defendant to contact Plaintiff's residential cellular telephone with marketing text messages.

38. To the extent that Defendant had express consent to contact Plaintiff, that consent was expressly revoked on February 7, 2025 when Plaintiff responded "Stop".

39. Plaintiff is the subscriber and sole user of the 9213 Number and is financially responsible for phone service to the 9213 Number.

40. Plaintiff's 9213 Number is his residential number which he uses for personal purposes.

41. Plaintiff registered his 9213 with the national do-not-call registry on February 12, 2009, and has been registered at all times relevant to this action.

42. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

43. Defendant's text messages originated from telephone number 727-425-5138, a number which upon information and belief are owned and operated by Defendant or on behalf of Defendant for Defendant's financial benefit.

44. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

Defendant also has access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests.

45. To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform. Defendant's use of a generic text message (depicted above) further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

46. The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

47. The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

48. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

49. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

50. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

51. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

52. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

53. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

54. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

55. Compliance with the FTSA will not result in Defendant having to cease its business operations.

56. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

57. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

58. Plaintiff and the Class members revoked any consent they may have provided Defendant to text message them by responding with "Stop" opt-out instructions.

59. Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

## CLASS ACTION ALLEGATIONS

### PROPOSED CLASSES

60. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

61. Plaintiff brings this case on behalf of the Classes defined as follows:

> **TCPA "STOP" Class: All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more text messages within any 12-month period, from Defendant, regarding Defendant's goods or services, to said person's residential cellular telephone number, after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

> **FTSA "STOP" Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, from Defendant, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**
>
> **FTSA Autodialer Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, from Defendant utilizing the Platform, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**
>
> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of promoting Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**

62. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

63. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

64. Plaintiff is informed and believes that there are at least 50 individuals that fall within the Class definitions given Defendant's use of robotexts to solicit consumers without their prior express written consent and its refusal to honor stop requests. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

65. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

66. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

a) Whether Defendant violated 47 C.F.R. § 64.1200(d);
b) Whether Defendant violated Fla. Stat. § 501.059;
c) Whether Defendant violated 47 C.F.R. § 64.1200(c);
d) Whether Defendant's conduct was knowing and willful;
e) Whether Defendant adhered to requests by class members to stop sending text messages to their telephone numbers;
f) Whether Defendant keeps records of text recipients who revoked consent to receive texts.
g) Whether Defendant has any written policies for maintaining an internal do not call list.
h) Whether Defendant violated the privacy rights of Plaintiff and members of the class;
i) Whether Defendant is liable for damages, and the amount of such damages; and
j) Whether Defendant should be enjoined from such conduct in the future.

67. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

68. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

69. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

70. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

71. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(c)(2)**
**(On Behalf of the Plaintiff and the TCPA "STOP" Class)**

72. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 71 as is fully set forth herein.

73. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that

> person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

74. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

75. Plaintiff and the Class Members are residential telephone subscribers who received more than one text message made for purposes of telemarketing or solicitation purposes from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

76. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

77. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with “Stop” or similar opt-out instructions.

78. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

79. Defendant failed to honor Plaintiff's and the Class members' opt-out requests.

80. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

81. Plaintiff and the Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages.

82. Plaintiff and the Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

83. Plaintiff and the Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

84. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

85. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

86. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

**COUNT II**
**<u>VIOLATION OF FLA. STAT. § 501.059(5)</u>**
**(On Behalf of Plaintiff and the FTSA "STOP" Class)**

87. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

88. In pertinent part, the FTSA provides:

> A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a

> consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission:
>
> (a) Made by or on behalf of the seller whose goods or services are being offered; or
>
> (b) Made on behalf of a charitable organization for which a charitable contribution is being solicited.

Fla. Stat. § 501.059(5).

89. "'Telephone solicitor' means a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices." Fla. Stat. § 501.059(1)(i).

90. Defendant is a telephone solicitor as defined under the FTSA.

91. Plaintiff and the Class Members are consumers who received one or more text messages regarding Defendant's goods and services after they communicated to Defendant that they did not wish to receive Defendant's text messages.

92. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

93. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

94. Defendant failed to honor Plaintiff's and the Class members' opt-out requests.

95. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

96. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT III**
**<u>VIOLATION OF FLA. STAT. § 501.059(8)(a)</u>**
**(On Behalf of Plaintiff and the FTSA Autodialer Class)**

97. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

98. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

99. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

100. Plaintiff and the Class members revoked any consent they may have provided Defendant by responding with a "stop" or similar opt-out instruction.

101. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls (texts) to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

102. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

103. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

104. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT IV**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

105. Plaintiff repeats and realleges the paragraphs 1 through 71 of this Complaint and incorporates them by reference herein.

106. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

107. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[1]

108. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

109. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

110. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

111. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, pray for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

a) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA and FTSA;

b) An order declaring that Defendant's actions, as set out above, violate the TCPA and FTSA;

c) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## DOCUMENT PRESERVATION DEMAND

112. Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

Dated: July 23, 2025

**SHAMIS & GENTILE, P.A.**
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
Christopher Berman, Esq.
Florida Bar No. 1010654
cberman@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299

**EDELSBERG LAW P.A.**
*/s/ Scott Edelsberg*_
Scott Edelsberg, Esq.
Florida Bar No. 0100537
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Telephone: 305-975-3320
Email: scott@edelsberglaw.com

*Counsel for Plaintiff and the Classes*